**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **ROGELIO OROZCO, # R-26820,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 16-cv-1179-MJR** |
| | ) | |
| **KIMBERLY S. BUTLER,** | ) | |
| **MINN T. SCOTT,** | ) | |
| **REBECCA A. COWAN,** | ) | |
| **ERIN S. CARTER,** | ) | |
| **LESLIE McCARTY,** | ) | |
| **SALVADOR A. GODINEZ,** | ) | |
| **SCOTT T. HOLTE,** | ) | |
| **ABERARDO A. SALINAS,** | ) | |
| **RANDY S. PFISTER,** | ) | |
| **TERRI ANDERSON,** | ) | |
| **and DONALD STOLWORTHY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

# MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff, currently incarcerated at Stateville Correctional Center ("Stateville"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. His claims involve events that took place while he was confined at Menard and Pontiac Correctional Centers. He asserts that he was subjected to retaliation, cruel and unusual punishment, and denied due process of law when he was put in disciplinary segregation for a year, followed by another 8 months in administrative segregation. Plaintiff is serving a 38-year sentence for murder. This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the

1

Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id.* At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that Plaintiff's claims are subject to dismissal pursuant to § 1915A.

## The Complaint

While Menard was on lockdown in April 2014, Plaintiff was questioned by investigators about prison gang activity and pressured to disclose names of inmates who were involved in Security Threat Groups ("STG's").   The investigator accused Plaintiff of holding a ranking position in a gang.  (Doc. 5, p. 9).  Plaintiff denied any involvement in an STG, and said he had no knowledge of others' gang activity, so could not provide any information.  On April 22, 2014, Carter wrote Plaintiff a disciplinary ticket (charging him with gang or unauthorized organization activity), allegedly in retaliation for Plaintiff's refusal to divulge information on STG's.  *Id.* Plaintiff's attached documents regarding the disciplinary charges state that confidential sources named him as an officer of the Latin Kings.  (Doc. 5-1, pp. 6-7).

On April 24, 2014, Plaintiff appeared before the adjustment committee (made up of Scott and Hart).  Crediting three confidential informants, they found Plaintiff guilty and recommended punishment of 3 months in segregation, along with the loss of certain privileges.  (Doc. 5, p. 9; Doc. 5-1, pp. 9-10).  This recommendation, however, was remanded to the committee by Warden Butler.  Plaintiff's ticket was rewritten, and a rehearing was held on May 9, 2014, conducted by Scott and Cowan.

The May 9 hearing date fell outside the time limitations imposed by the Illinois Administrative Code.   At the direction of Butler, Scott and Cowan increased Plaintiff's disciplinary segregation term from 3 months to 1 year (the maximum available punishment).  (Doc. 5, pp. 10-11).  Butler added the further sanction of a disciplinary transfer.  Plaintiff claims that these actions violated the Illinois Administrative Code provision that prohibits increasing an original disciplinary sanction imposed by the adjustment committee.  He also asserts that the longer punishment was imposed in retaliation for his refusal to provide information to the

3

investigators.  Plaintiff filed a grievance over the disciplinary action, but was transferred on May 28, 2014, to Pontiac before getting any response.

Plaintiff served his segregation term in Pontiac, where Pfister was the warden at that time.  On June 8, 2014, Plaintiff filed another grievance over the Menard officials' actions related to his disciplinary case.  After this, unnamed Pontiac officers confiscated and destroyed Plaintiff's personal property, increased his commissary restriction from 1 month to 2 years, and lost/misplaced his legal documents.  (Doc. 5, p. 12).  According to Plaintiff, these actions were taken to assist Pfister in carrying out the Menard Administration's "retaliation-agenda" against Plaintiff.  *Id.* Pfister further retaliated against Plaintiff by denying his numerous requests for cutting his segregation time, and shortening his C-grade and commissary restrictions, despite Plaintiff's good behavior during his segregation confinement.  (Doc. 5, pp. 12-13).

On October 20, 2014, Godinez (IDOC Director) and McCarty (Administrative Review Board), in response to Plaintiff's grievance(s), remanded the disciplinary matter back to Carter at Menard for further substantiation of the charges.   (Doc. 5, p. 13).   They disregarded the violations of the Illinois Administrative Code's time limits and prohibition on increasing a punishment upon rehearing.

On November 11, 2014, Plaintiff received a copy of the rewritten disciplinary ticket. After a postponement, the hearing on this revised ticket was held at Pontiac on November 25, 2014, before Holte and Salinas.  (Doc. 5, pp. 14-15).  Plaintiff submitted a written statement, challenged the evidence, and pointed out the Administrative Code violations.  His request to call Scott (Menard official) as a witness was denied.  Holte, Salinas, and Pfister found Plaintiff guilty again, and reimposed the 1-year segregation term.  Plaintiff claims this action was further retaliation against him for filing grievances against Menard and Pontiac officials.  (Doc. 5, pp.

16-17).

Plaintiff filed a grievance challenging the November 25, 2014 rehearing and disciplinary sanctions.  He served the remainder of the 1-year segregation term, as Pfister denied him any relief.  (Doc. 5, pp. 17-18).

On April 27, 2015, Anderson (Administrative Review Board) and Stolworthy (IDOC Director) issued a final order, agreeing that the increase in Plaintiff's punishment from 3 months to 1 year had been improper under the Administrative Code, and reducing his punishment to the original 3-month duration.  (Doc. 5, p. 18).  Plaintiff complains, however, that he effectively got no relief, because he had already completed serving the full year in segregation, and other complaints he raised were not addressed (which he claims constituted retaliation on the part of Anderson and Stolworthy).  Moreover, the disciplinary matter "paved the way" for Plaintiff to be held in administrative detention for another 8 months, under the supervision of Pfister, following his release from punitive segregation.  Plaintiff was released from administrative detention on December 10, 2015.  (Doc. 1, p. 19).

Plaintiff argues that the 9 months he was required to serve in punitive segregation before the retroactive reduction in his punishment constituted an atypical and significant hardship.  (Doc. 5, pp. 20-24).  In support of this claim, he cites the privileges he lost after he was removed from Menard's general population (job opportunities, vocational classes, religious services, recreational opportunites, visitation privileges, and movement outside the cell).  In contrast, he was confined to his cell in Pontiac's segregation unit for 24 hours per day (with the exception of 4 hours per week of recreation in an 8-by-15-foot cage), without access to the telephone, commissary, contact visits, or other various privileges.  The limited food supply caused him to lose 50 pounds, and the noise level from nearby mentally ill inmates limited his sleep to 2-3

hours per night.  (Doc. 5, p. 21).  The segregation cells were infested with roaches and ants, and at times Plaintiff was placed in cells where feces had been "smeared in the cracks and crevices of the walls."  (Doc. 5, p. 22).

He describes the additional 8 months in administrative detention as "restrictive in nature," without further explanation.  (Doc. 5, p. 22).

Plaintiff seeks compensatory and punitive damages for the 9 months of excessive segregation confinement and the 8 months of administrative detention, as well as for the retaliatory actions of the Defendants.  (Doc. 5, p. 25).

## Merits Review Pursuant to 28 U.S.C. § 1915A

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts.  The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.  The designation of these counts does not constitute an opinion as to their merit.  Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

> **Count 1:**  Fourteenth Amendment claim against Carter, Scott, Butler, and Cowan, for deprivation of a liberty interest without due process, for imposing a 1-year term of punitive segregation on Plaintiff when he should have been required to serve only 3 months;

> **Count 2:**  First Amendment retaliation claim against Carter for issuing the April 22 disciplinary ticket, and against Butler for increasing Plaintiff's punishment, because Plaintiff refused to provide information about other prisoners' gang involvement;

> **Count 3:**  First Amendment retaliation claim against Pfister, for denying Plaintiff's requests for reduction of his punishment, lengthening Plaintiff's commissary restriction, and causing Plaintiff's property to be lost or destroyed, in furtherance of the "retaliation-agenda" begun by Menard officials;

> **Count 4:**  Fourteenth Amendment due process claim against Godinez and

6

McCarty, for failing to address all of Plaintiff's complaints about violations of the Administrative Code in the disciplinary action, and allowing him to remain in segregation beyond the time he should have served;

**Count 5:**  Fourteenth Amendment claim against Holte, Salinas, and Pfister for deprivation of a liberty interest without due process, for reimposing the 1-year segregation term after the rehearing on Plaintiff's STG charges;

**Count 6:**  First Amendment retaliation claim against Holte, Salinas, and Pfister, for reimposing the 1-year segregation term, because Plaintiff filed grievances against Menard and Pontiac officials;

**Count 7:**  Fourteenth Amendment due process claim against Anderson and Stolworthy, for failing to reduce Plaintiff's segregation punishment until he had fully served the 1-year term, and for failing to consider or respond to additional issues raised in Plaintiff's grievances;

**Count 8:**  Fourteenth Amendment due process claim against Pfister, for holding Plaintiff in administrative detention for 8 months following the end of his punitive segregation confinement;

**Count 9:**  Eighth Amendment claim against Pfister, for housing Plaintiff in cells infested with insects and contaminated with feces, subjecting him to intolerable noise, and failing to provide him with adequate nutrition during Plaintiff's segregation confinement;

Each of these counts shall be dismissed for failure to state a claim upon which relief may be granted.  However, Plaintiff shall be allowed the opportunity to submit an amended complaint limited to the claim in Count 9, in order to correct the deficiencies in his pleading.

### Dismissal of Count 1 – Deprivation of a Liberty Interest Without Due Process – Menard Defendants

Plaintiff focuses this claim on the last 9 months he spent in disciplinary segregation.  As a result of Plaintiff's grievance(s), it was ultimately determined that he should have been required to serve only 3 months in segregation, but by the time that order was issued, Plaintiff had finished serving the entire year.  In Plaintiff's case, the extra 9 months in segregation does not give rise to a Fourteenth Amendment claim.

Under certain limited circumstances, an inmate punished with segregation may be able to pursue a claim for deprivation of a liberty interest without due process of law. *See Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009). However, those circumstances are not present in the instant case. First, the Complaint does not reveal any unconstitutional denial of procedural due process in the conduct of Plaintiff's disciplinary hearings over the April 22, 2014, STG charge. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974) (to satisfy due process concerns, inmate must be given advance written notice of the charge, the right to appear before the hearing panel, the right to call witnesses if prison safety allows, and a written statement of the reasons for the discipline imposed); *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994) (disciplinary decision must be supported by "some evidence"); *see also Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007) ("once the meager threshold has been crossed our inquiry ends"). Plaintiff was not denied any of the *Wolff* protections either in the original hearing on April 24, or in the rehearing on May 9. And despite Plaintiff's assertion of innocence, the committee had evidence before it, in the form of the statements of the confidential informants, to support the finding that Plaintiff had engaged in unauthorized gang activity. Although this evidence was contested, it was nevertheless sufficient to impose disciplinary sanctions on Plaintiff.

Plaintiff includes much argument pointing to violations of the applicable Illinois Administrative Code provisions, both in the timing of the May 9 rehearing and in the decision to impose greater sanctions on him than he originally incurred. Indeed, it appears that these deficiencies were the reason why Anderson and Stolworthy ultimately ruled in Plaintiff's favor and rescinded the additional 9 months of segregation. (Doc. 5-1, p. 57). An administrative code violation, however, does not translate into a constitutional violation upon which a civil rights claim may rest. A federal court does not enforce state law and regulations. *Archie v. City of*

*Racine*, 847 F.2d 1211, 1217 (7th Cir. 1988) (en banc), *cert. denied,* 489 U.S. 1065 (1989); *Pasiewicz v. Lake Cnty. Forest Preserve Dist.*, 270 F.3d 520, 526 (7th Cir. 2001). Therefore, the failure to follow the Illinois Administrative Code does not establish a Fourteenth Amendment due process claim.

Even where a disciplinary proceeding is found to be constitutionally flawed, a prisoner who brings a due process claim still faces additional hurdles. An inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her disciplinary confinement impose "atypical and significant hardship[s] . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997) (in light of *Sandin*, "the right to litigate disciplinary confinements has become vanishingly small"). For prisoners whose punishment includes being put in disciplinary segregation, under *Sandin*, "the key comparison is between disciplinary segregation and nondisciplinary segregation rather than between disciplinary segregation and the general prison population." *Wagner*, 128 F.3d at 1175.

The Seventh Circuit has elaborated two elements for determining whether disciplinary segregation conditions impose atypical and significant hardships: "the combined import of the duration of the segregative confinement *and* the conditions endured by the prisoner during that period." *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009) (emphasis in original). The first prong of this two-part analysis focuses solely on the duration of disciplinary segregation. For relatively short periods of disciplinary segregation, inquiry into specific conditions of confinement is unnecessary. *See Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005) (56 days); *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997) (70 days) ("a relatively short period when one considers his 12 year prison sentence"). In these cases, the short duration of the

disciplinary segregation forecloses any due process liberty interest regardless of the conditions. Even a 6-month term in segregation, standing alone, may not trigger due process concerns. *Hardaway v. Meyerhoff*, 734 F.3d 740, 743-44 (7th Cir. 2013) (quoting *Marion*, 559 F.3d at 698) (inmate who was confined in segregation behind a solid cell door with an aggressive cellmate, and limited to once-a-week access to the shower and prison yard, did not suffer an "atypical and significant hardship" in relation to the ordinary conditions prevailing in non-disciplinary segregation).

In the instant case, Plaintiff was confined in punitive segregation for 9 months beyond the time he should have served. This duration would arguably be long enough to trigger an inquiry into the conditions of his confinement – *if* Plaintiff had been deprived of a constitutional procedural protection during the disciplinary hearing – which he was not. Plaintiff complains that while he was in segregation, he lost access to numerous privileges and programs that had been available to him in the general population. However, that is not the relevant comparison. In order to satisfy the second factor outlined in *Marion*, the conditions in punitive segregation must have imposed an atypical and significant hardship when compared with those in nondisciplinary or administrative segregation.

Plaintiff points to some conditions in segregation which might meet that test – insect infestation, cells contaminated with human waste, and a limited diet which led to significant weight loss.[1] However, these conditions would only support a claim for deprivation of a liberty interest without due process, if there had first been a procedural flaw of constitutional dimension during the adjudication of Plaintiff's disciplinary charges. Because the Complaint does not demonstrate any procedural due process violation in the conduct of Plaintiff's April 24, 2014

---

[1] These conditions are also relevant to the Eighth Amendment claim in Count 9, and shall be further discussed below.

disciplinary hearing or May 9, 2014 rehearing, he cannot maintain a Fourteenth Amendment claim.  **Count 1** against Carter, Scott, Butler, and Cowan shall therefore be dismissed with prejudice.

### Dismissal of Count 2 – Retaliatory Discipline – Carter & Butler

Plaintiff alleges that Carter issued the April 22, 2014, disciplinary charge for engaging in STG activity as an act of retaliation, because Plaintiff refused to give investigators information about other inmates who were involved in gangs.  Likewise, he claims that the reason Butler increased his punishment to 1 year in segregation was due to Plaintiff's refusal to identify other inmates involved in STG's.  However, the Complaint reflects that Carter and Butler had independent evidence that Plaintiff was guilty of gang involvement, and Plaintiff himself states that a 1-year segregation term was a permissible punishment for that infraction.

The Seventh Circuit has observed:

> [N]ot every claim of retaliation by a disciplined prisoner, who either has had contact with, or has filed a lawsuit against prison officials, will state a cause of action for retaliatory treatment.  Rather, the prisoner must allege a chronology of events from which retaliation may plausibly be inferred.  *Murphy v. Lane*, 833 F.2d 106, 108-09 (7th Cir. 1987) (holding that the plaintiff's complaint "set forth a chronology of events from which retaliatory animus on the part of defendants could arguably be inferred" sufficient to overcome a motion to dismiss).  *See also Benson v. Cady*, 761 F.2d 335, 342 (7th Cir. 1985) (noting that "alleging merely the ultimate fact of retaliation is insufficient").  Barring such a chronology, dismissal may be appropriate in cases alleging retaliatory discipline.

*Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988).

In order to state a claim for retaliation in the prison context, an inmate must have engaged in some protected First Amendment activity (for example, filing a grievance or otherwise complaining about conditions of confinement), experienced an adverse action that would likely deter such protected activity in the future, and must plausibly allege that the protected activity was "at least a motivating factor" in the Defendants' decision to take the retaliatory action.

*Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009).

Plaintiff's claim that the disciplinary action was brought in retaliation for his silence is not supported by the chronology of events in his case. An investigation into gang activity turned up evidence that Plaintiff had violated prison rules. Plaintiff does not claim to have engaged in any protected First Amendment activity prior to the investigation. Notably, an inmate's affiliation with or leadership in a prison gang is not entitled to First Amendment protection. *Westefer v. Snyder*, 422 F.3d 570, 574-75 (7th Cir. 2005) (prison gangs are "a manifest threat to prison order" and prisoners do not have a First Amendment right to belong to a gang). When investigators accused Plaintiff of gang involvement, he maintained his innocence and stated he did not know the gang leaders' identity. These events indicate that Plaintiff would likely have been charged with a disciplinary infraction whether or not he divulged any information about other prisoners, and, as discussed in Count 1, Defendants had sufficient evidence to support the finding of guilt on the disciplinary charge. In this context, Plaintiff's claim of retaliation is merely his own bald conclusion, and is insufficient to survive § 1915A review. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) ("conclusory legal statements" are not adequate to state a claim upon which relief may be granted). Accordingly, **Count 2** against Carter and Butler shall be dismissed without prejudice.

### Dismissal of Count 3 – Retaliation - Pfister

After Plaintiff was transferred to Pontiac, he filed another grievance to the Administrative Review Board on June 8, 2014, concerning the Menard officials who handled his disciplinary case. (Doc. 5, p. 12; Doc. 5-1, pp. 19-22). Subsequently, Pontiac staff members (whom Plaintiff does not identify) confiscated his personal property, lengthened his commissary restriction from 1 month to 2 years, and lost or misplaced his legal documents. Plaintiff attributes these actions

to Warden Pfister, claiming that staff members under his supervision carried out these acts as part of the ongoing "retaliation-agenda" instigated by Menard Intelligence Unit investigators. (Doc. 5, p. 12).  Plaintiff filed grievances over these matters, but states they were dismissed or not properly addressed.

In addition, Pfister allegedly continued the retaliation against Plaintiff by denying Plaintiff's numerous requests for a reduction in his segregation time, C-grade, and commissary restrictions.

The first part of this claim involves actions taken against Plaintiff by unnamed Pontiac officials, who were under the supervision of Warden Pfister.  This relationship, however, is not sufficient to implicate Pfister in the alleged retaliation.  Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under § 1983, the individual defendant must have caused or participated in a constitutional deprivation."  *Pepper v. Village of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005) (internal quotations and citations omitted).  Pfister's supervisory role alone does not make him legally responsible for the allegedly unconstitutional acts of his employees.  The doctrine of *respondeat superior* (supervisory liability) is not applicable to civil rights cases brought under § 1983.  *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001).  Plaintiff may have a possible claim against the individuals who allegedly destroyed or misplaced his property and imposed a longer commissary sanction, if he can plausibly connect those acts with his protected First Amendment activity.[2] Nonetheless, the Complaint fails to state a retaliation claim against Pfister, as the facts do not support any personal involvement on his part in the property loss and commissary matters.

The second part of this claim asserts that Pfister retaliated against Plaintiff by denying his

---

[2] The Court makes no comment regarding the potential merits of such a retaliation claim at this time, as that question is not properly before the Court.

requests for relief from the previously-imposed discipline (segregation and C-grade), as well as the commissary restriction.  (Doc. 5-1, pp. 61-68).  Plaintiff asserts that he displayed good behavior throughout his time in segregation, thus Pfister should have granted his requests.

Significantly, the segregation, C-grade, and at least part of the commissary restriction were imposed by Menard officials pursuant to the disciplinary proceeding there.  It would be unlikely for an official who was not involved in the original determination of a disciplinary sanction to independently lift or revise that punishment, particularly when the sanction was the subject of a still-pending grievance.  Plaintiff's documentation states additional reasons for the denial of relief – one counseling note contradicts Plaintiff's claims of good conduct, and others cite the nature of the offense and the need for more observation of Plaintiff.  (Doc. 5-1, pp. 62, 65, 68).  Taking the factual allegations as a whole, it is simply not plausible that Pfister's denial of Plaintiff's requests for cuts in his punishment was due to a retaliatory motive triggered by Plaintiff's pursuit of a grievance against parties in his previous prison.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (claim of entitlement to relief must cross "the line between possibility and plausibility"); *Murphy v. Lane*, 833 F.2d 106, 108-09 (7th Cir. 1987) (chronology of events in the complaint must support the inference of a retaliatory animus).

For these reasons, **Count 3** against Pfister for retaliation shall be dismissed without prejudice.

### Dismissal of Count 4 – Due Process – Godinez & McCarty

In this claim, Plaintiff takes issue with the October 20, 2014, order from Godinez and McCarty which, as a result of Plaintiff's grievance, remanded the disciplinary matter back to Menard Officer Carter to provide additional information.  (Doc. 5, p. 13; Doc. 5-1, p. 26).  He complains that the order failed to consider any of his arguments based on the Illinois

14

Administrative Code – that the May 9 hearing violated the time limitation for rehearing the ticket, and that the Code prohibited the imposition of an increased sanction.   According to Plaintiff, Godinez and McCarty should have dismissed the charges against him, yet they allowed him to remain in segregation beyond the time he should have served.

Plaintiff essentially takes issue with the manner in which his grievance was handled by these two Defendants.   However, the mishandling or even the denial of a grievance will not support a constitutional claim.   "[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause."   *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996).   The Constitution requires no procedure at all, and the failure of state prison officials to follow their own grievance procedures does not, of itself, violate the Constitution. *Maust v. Headley*, 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982).   Thus, the alleged failure of Godinez and McCarty to consider Plaintiff's arguments based on administrative code violations does not state a claim – and as noted in the discussion under Count 1, a state code violation does not implicate constitutional scrutiny.

The failure to free Plaintiff from segregation at this stage of the grievance process did not violate any constitutional provision.   As discussed in the previous counts, there was no due process violation in the original imposition of his punishment, and the facts do not support a claim for retaliation based on the disciplinary action.   Accordingly, Plaintiff remained in the status where he had been lawfully placed.   No liability can be imposed on Godinez or McCarty for declining to "rescue" him from that status when the internal grievance process had not yet been completed.   In fact, the subsequent resolution of the grievance largely in Plaintiff's favor suggests that the action to remand the matter to the initiating officer was a necessary step in the process to reach that conclusion.

To summarize, **Count 4** against Godinez and McCarty shall be dismissed with prejudice for failure to state a claim upon which relief may be granted.

### Dismissal of Count 5 – Deprivation of a Liberty Interest Without Due Process – Pontiac Defendants

Plaintiff brings this claim against the Pontiac adjustment committee members (Holte and Salinas) who conducted the rehearing of his STG charges after the disciplinary ticket was rewritten by Menard Investigator Carter, and against Warden Pfister.   He asserts that these Defendants reimposed the 1-year segregation term in violation of his due process rights.

The rehearing was to have been conducted on November 20, 2014, but was postponed to November 25 because Plaintiff had not yet been served with an original of the rewritten charging document.   (Doc. 5, p. 15).   At the November 25 hearing, Plaintiff submitted his written statement and requested the committee to call Menard Officer Scott (who chaired the original Menard adjustment committees) as a witness to attest to the procedural violations in the conduct of the disciplinary proceedings at Menard.   Scott was not called as a witness.   Plaintiff presented all his arguments regarding the time limit violation on his Menard rehearing, the improperly increased punishment in the rehearing, and the "vague, false, and contradictive" information contained in the rewritten disciplinary report.   *Id.*   He further argued that the Pontiac rehearing exceeded the permissible time limits in the administrative code.   Holte and Salinas acknowledged Plaintiff's arguments, but declined to dismiss the disciplinary charges, telling Plaintiff that it would be "up to the ARB" to decide the disposition of the matter.  (Doc. 5, p. 16). Plaintiff maintains that these actions, and Pfister's adoption of Holte and Salinas' disciplinary finding of guilt and reimposition of the same segregation term, violated the Illinois Administrative Code's procedural rules, and punished him based on unsubstantiated charges.

The analysis of this due process claim is nearly identical to the claim in Count 1.   As

noted in that discussion, violations of the administrative code do not implicate the Constitution, and cannot support a Fourteenth Amendment due process claim. Only if the disciplinary proceeding ran afoul of the procedural protections outlined in *Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974), would a potential constitutional claim arise.

Here, Plaintiff requested a witness, Marion Officer Scott, but that request was denied. However, in consideration of all the facts, it cannot be said that Plaintiff's inability to call Scott as a witness hindered his presentation of his defense. Plaintiff's only reason for presenting Scott's expected testimony was to attempt to have Scott "attest to the procedural violations" that tainted the disciplinary proceedings at Menard. (Doc. 5-1, p. 15). But the timing of those proceedings is part of the record in Plaintiff's disciplinary action, and was never in dispute. Whether or not Scott would have testified in Plaintiff's favor about the implications of the administrative regulations in light of the previous Menard hearing dates, Plaintiff made his arguments – and eventually prevailed. Thus, the absence of Scott as a witness was harmless to his case. In light of all these circumstances, it cannot be said that the failure of Holte and Salinas to call Scott as a witness for Plaintiff resulted in a violation of Plaintiff's due process rights under the Fourteenth Amendment.

As discussed above under Count 1, Plaintiff cannot sustain a Fourteenth Amendment claim for deprivation of a liberty interest without due process for the original imposition of the 1-year segregation term. The due process claim in Count 5 fails for the same reason – there was no denial of constitutional due process protections in the handling of the disciplinary rehearing at Pontiac on November 25, 2014, therefore Plaintiff was not deprived of a liberty interest when Holte, Salinas, and Pfister reimposed the same 1-year segregation term after this rehearing. For these reasons, **Count 5** against Holte, Salinas, and Pfister shall be dismissed with prejudice.

**Count 6 – Retaliatory Discipline – Pontiac Defendants**

This claim is based on the same facts described in Count 5, but focuses on Plaintiff's assertion that the rehearing and reimposition of the 1-year segregation term represents retaliation against him for grievances he filed against Menard and Pontiac officials.  He points to three grievances: 1) the June 8, 2014, grievance he submitted against the Menard officials who sanctioned him with the 1-year segregation term in the first place (Appendix E, Doc. 5-1, pp. 19-22); the December 14, 2014, grievance he filed to protest the Pontiac disciplinary rehearing held on November 25, 2014 (Appendix O, Doc. 5-1, pp. 49-51); and the June 12, 2014, grievance he filed against Pontiac staff regarding the confiscation of personal property, some of which was deemed to be contraband, but some of which was returned to Plaintiff's possession (Appendix U, Doc. 501, pp. 70-73).

As noted above in the discussion of Counts 2 and 3, a retaliation claim must plead a chronology of events that supports the inference that some First Amendment activity motivated the defendant(s) to take adverse action in order to retaliate against the plaintiff.  *See Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009); *Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988).  Here, Plaintiff's conclusion that Holte, Salinas, and Pfister retaliated against him for these grievances when they allowed the 1-year segregation term to stand, is not supported by the facts he presents.

Plaintiff's June 8, 2014, grievance against Menard staff was the reason why the disciplinary action was reviewed, remanded to Menard officer Carter, and then reheard at Pontiac by Holte and Salinas.  Just as with Plaintiff's retaliation claims in Count 2 against Carter and in Count 3 against Pfister, the Pontiac hearing panel (Holte and Salinas) had before it sufficient evidence to support their guilty finding against Plaintiff on the STG activity charge.

18

The 1-year term of segregation was a permissible punishment for that disciplinary infraction.  In this factual context, the allegation that Holte, Salinas, and Pfister reimposed the same segregation term in order to retaliate against Plaintiff for challenging the original disciplinary action strains credulity.

The second grievance Plaintiff cites as a foundation for his retaliation claim was not even filed until December 14, 2014 – over 2 weeks after the November 25 hearing where the punishment was reimposed on Plaintiff.  Thus, that grievance could not have motivated Holte, Salinas, or Pfister to retaliate against Plaintiff, because they took the action Plaintiff complains of before he submitted the grievance.

Finally, Plaintiff does not set forth any facts to suggest that Holte, Salinas, Pfister was aware of Plaintiff's June 12, 2014, grievance over his property dispute, let alone that this grievance motivated them to reimpose the 1-year segregation term after the November 25, 2014 rehearing.

These retaliation claims again are conclusory, and lack the factual support to survive review under § 1915A.  *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) ("conclusory legal statements" are not adequate to state a claim upon which relief may be granted).  Accordingly, **Count 6** against Holte, Salinas, and Pfister for retaliation shall be dismissed without prejudice.

### Count 7 – Due Process – Anderson & Stolworthy

This claim takes issue with the April 27, 2015, order that ruled in Plaintiff's favor on his grievance over the disciplinary procedure.  Anderson and Stolworthy concluded that Plaintiff's 1-year segregation term was indeed imposed in violation of the Illinois Administrative Code, because the Menard rehearing of the matter improperly increased Plaintiff's punishment from 3 months to 1 year.  (Doc. 5-1, pp. 57-58).  Plaintiff complains that the order gave him no effective

relief, because by the time it was issued, he had finished serving the full 1-year segregation term as well as the other sanctions.   Further, Anderson and Stolworthy did not address his other complaints about the disciplinary proceedings.

These facts do not reveal any unconstitutional due process violation.  Instead, they show that Plaintiff received the process that was due, in that his pursuit of his grievance was successful in the end.  The unfortunate fact that the process was so lengthy that Plaintiff's vindication came too late, after he finished serving his punishment, does not give rise to a Fourteenth Amendment due process claim.  As discussed in Count 1, because there was no constitutional due process violation in the disciplinary proceedings (only a violation of the Illinois Administrative Code), Plaintiff cannot sustain a claim for deprivation of a liberty interest without due process over the excess 9 months he served in disciplinary segregation.

Furthermore, as noted in the discussion of Count 4, Plaintiff cannot bring a civil rights claim based on Anderson and Stolworthy's failure in their final order to discuss each of the points raised by Plaintiff in his grievance.   The grievance procedure is not constitutionally mandated, and any mishandling or oversight in the adjudication of a grievance will not support a § 1983 claim.  *See Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Maust v. Headley*, 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982).

Accordingly, **Count 7** against Anderson and Stolworthy shall be dismissed with prejudice.

### Count 8 – Due Process – Administrative Detention

Plaintiff seeks relief against Warden Pfister for keeping him in administrative detention at Pontiac for 8 months, following his release from punitive segregation.   This additional confinement in administrative segregation, however, does not give rise to a civil rights claim.

It has long been established that a prisoner's confinement in administrative detention does not implicate a constitutionally protected liberty interest.  *Crowder v. True*, 74 F.3d 812, 814-15 (7th Cir. 1996).  *See also Williams v. Ramos*, 71 F3d 1246, 1248 (7th Cir. 1995) (prison officials have discretion to place inmates in administrative or investigative segregation, or involuntary protective custody, and no liberty interest is implicated by these types of confinement).  Although an inmate in administrative segregation may be subjected to more burdensome conditions than he would face in the general population, those conditions are "within the normal limits or range of custody which the conviction has authorized the [government] to impose."  *Meachum v. Fano*, 427 U.S. 215, 225 (1976) (transfer of inmates to prison with more burdensome conditions of confinement not a violation of due process); *see Sandin v. Conner*, 515 U.S. 472, 477 (1995).  It does not constitute a "grievous loss" of liberty, *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972), an atypical and significant hardship on the prisoners generally in relation to the ordinary incidents of prison life, nor a dramatic departure from the basic conditions or duration of the prisoner's sentence.  *Sandin*, 515 U.S. at 481-85.

Here, Plaintiff does not claim that he was subjected to any unusual hardships or conditions during his administrative confinement.  He states only that those 8 months were "restrictive in nature."  (Doc. 5, p. 22).  It does appear likely that Plaintiff's disciplinary "conviction" was at least part of the reason why Pfister decided to hold him in administrative segregation, as Plaintiff claims.  Notably, however, the reduction in Plaintiff's punishment did not alter the fact that he remained guilty of the charge of gang/STG activity.  There was no due process violation in Pfister's decision to place Plaintiff in administrative confinement, or to keep him there for 8 months as he progressed through the stages of review for his eventual return to the general population.  (*See* Doc. 5-1, pp. 91, 96-97, 99).

The due process claim in **Count 8** against Pfister shall be dismissed with prejudice.

### Count 9 – Eighth Amendment – Conditions of Confinement

Finally, Plaintiff claims that he was subjected to cruel and unusual punishment during his confinement in segregation at Pontiac.  He mentions that he was held in cells that were infested with roaches and ants, and that some cells had feces smeared in the cracks and crevices of the walls.  He also states that the diet for segregation prisoners was inadequate, and as a result, he lost 50 pounds during the time he spent in segregation.  Finally, he was unable to get sufficient sleep because mentally ill inmates in the segregation area yelled and screamed during the night and the noise kept him awake.  (Doc. 5, pp. 21-22).  Plaintiff names Warden Pfister in connection with this claim.

The cell conditions Plaintiff describes could support a civil rights claim for unconstitutional conditions of confinement. However, the Complaint does not set forth sufficient facts to show that Plaintiff faced an objectively serious risk to his health from these conditions, nor to impose liability on Pfister.

In a case involving conditions of confinement in a prison, two elements are required to establish a violation of the Eighth Amendment's cruel and unusual punishments clause.  First, an objective element requires a showing that the conditions deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  Prison conditions that deprive inmates of basic human needs – food, medical care, sanitation, or physical safety – may violate the Eighth Amendment.  *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); s*ee also James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992).

The second requirement is a subjective element – establishing a defendant's culpable

state of mind, which is deliberate indifference to a substantial risk of serious harm to the inmate from those conditions. *Farmer*, 511 U.S. at 837, 842. The deliberate indifference standard is satisfied if the plaintiff shows that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm from the conditions. *Farmer*, 511 U.S. at 842. A failure of prison officials to act in such circumstances suggests that the officials actually want the prisoner to suffer harm. *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992). It is well-settled that mere negligence is not enough. *See, e.g., Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986).

Serious insect infestation and contamination from human waste have been found to meet the objective requirement for an Eighth Amendment claim. *See Thomas v. Illinois*, 697 F.3d 612, 614-15 (7th Cir. 2012) (depending on severity, duration, nature of the risk, and susceptibility of the inmate, prison conditions – such as vermin infestation – may violate the Eighth Amendment if they caused either physical, psychological, or probabilistic harm); *Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007) (prisoner held in cell for three to six days with no working sink or toilet, floor covered with water, and walls smeared with blood and feces); *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992) (summary judgment improper where inmate alleged he lived with "filth, leaking and inadequate plumbing, roaches, rodents, the constant smell of human waste, . . . [and] unfit water to drink[.]"); *Johnson v. Pelker*, 891 F.2d 136, 139 (7th Cir. 1989) (inmate held for three days in cell with no running water and feces smeared on walls). In Plaintiff's case, however, he does not include any facts to indicate the length of time he was subjected to the conditions he complains of, the severity of the infestation, whether he suffered any injury from those conditions, or whether he was provided with means to remedy the cell conditions.

Plaintiff's complaint about the inadequate food and weight loss suffers from similar omissions. In some circumstances, a prisoner's claim that he was denied food may satisfy the objective element of a conditions claim but, as the Seventh Circuit has held, the denial of food is not a *per se* violation of the Eighth Amendment. Rather, a district court "must assess the amount and duration of the deprivation." *Reed v. McBride*, 178 F.3d 849, 853 (7th Cir. 1999). A substantial weight loss alone does not show that Plaintiff's constitutional rights were violated. The loss of 50 pounds might have improved his health, or might have compromised it, but the Court cannot tell, because the Complaint is silent on that point. Plaintiff also does not mention any other health effects he might have experienced as a result of the allegedly limited diet. Likewise, he does not elaborate on the frequency of the sleep interruptions or any health symptoms or effects that ensued. More information is needed to assess whether any of these conditions amounts to an objectively serious deprivation of a basic human need.

Turning to the subjective element of this claim, Plaintiff fails to state any facts to demonstrate that Warden Pfister was aware of any of these conditions, yet failed to take steps to correct them. As noted in the discussion of Count 3 above, Pfister's supervisory role is not sufficient to impose liability on him for the action or inaction of his subordinate staff. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Plaintiff does not mention whether he complained to any prison official about the problems in his segregation cells, and does not describe what response he received from any individual to whom he may have directed a complaint. Before Pfister or any other official may be held to answer to the claims in Count 9, Plaintiff must set forth facts to show that he made the Defendant aware of the conditions and the risk to his health, but the Defendant failed to take action to mitigate the risk.

24

For these reasons, **Count 9** shall be dismissed from the action without prejudice. Because all the other counts will also be dismissed, the entire Complaint (Doc. 5) shall be dismissed without prejudice.  However, Plaintiff shall be allowed the opportunity to replead the claim in Count 9 if he wishes to further pursue it.  If the amended complaint still fails to state a claim, or if Plaintiff does not submit an amended complaint, the entire case shall be dismissed with prejudice, and the dismissal shall count as a strike pursuant to § 1915(g).  The amended complaint shall be subject to review under § 1915A.

Notably, if Plaintiff submits an amended complaint, Count 9 (and likely the entire action) shall be transferred to the Federal District Court for the Central District of Illinois, where Pontiac is located, because the alleged constitutional violations regarding the cell conditions arose there.

## Pending Motions

Plaintiff has filed two identical motions for recruitment of counsel (Docs. 3 & 7).  The dismissal of the complaint without prejudice raises the question of whether Plaintiff is capable of drafting a viable amended complaint on Count 9 without the assistance of counsel.

There is no constitutional or statutory right to counsel in federal civil cases.  *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010); *see also Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006).  Nevertheless, the district court has discretion under 28 U.S.C. § 1915(e)(1) to recruit counsel for an indigent litigant.  *Ray v. Wexford Health Sources, Inc*., 706 F.3d 864, 866–67 (7th Cir. 2013).

When a *pro se* litigant submits a request for assistance of counsel, the Court must first consider whether the indigent plaintiff has made reasonable attempts to secure counsel on his own.  *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (citing *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007)).  If so, the Court must examine "whether the difficulty of the case—

factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Navejar*, 718 F.3d at 696 (quoting *Pruitt*, 503 F.3d at 655). "The question . . . is whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty, and this includes the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial." *Pruitt*, 503 F.3d at 655. The Court also considers such factors as the plaintiff's "literacy, communication skills, education level, and litigation experience." *Id*.

In the motions, Plaintiff states that he has written to 3 attorneys, but did not receive any response to his request for representation. (Docs. 3 & 7, p. 1). This reflects that Plaintiff has made some effort to secure counsel.

As to the second inquiry, Plaintiff states that he attended some high school, and obtained his G.E.D. He believes he is not able to represent himself because English is not his primary language. (Docs. 3 & 7, p. 2). Nonetheless, the complaint and attached documents reflect that Plaintiff is articulate and capable of coherently stating the relevant facts and his legal claims. At this juncture, the Court is merely concerned with whether this action can get out of the gate, so to speak. All that is required is for Plaintiff to include more factual content to support Count 9, regarding the conditions of his confinement in segregation, which officials were notified of the conditions, and how they responded. Plaintiff alone has knowledge of these facts, and no legal training or knowledge is required to set them down on paper. Therefore, the recruitment of counsel is not warranted at this time and the motions (Docs. 3 & 7) are **DENIED** without prejudice. The Court will remain open to appointing counsel as the case progresses.

**<u>Disposition</u>**

**COUNTS 1, 4, 5, 7, and 8** are **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted.  **COUNTS 2, 3, 6, and 9** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

Defendants **SCOTT, COWAN, McCARTY, GODINEZ, ANDERSON,** and **STOLWORTHY** are **DISMISSED** from this action with prejudice.  Defendants **BUTLER, CARTER, HOLTE, SALINAS,** and **PFISTER** are **DISMISSED** from this action without prejudice.

The Complaint (Doc. 5) is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that, should he wish to proceed with the Eighth Amendment claim in **COUNT 9**, Plaintiff shall file his First Amended Complaint within 28 days of the entry of this order (on or before April 4, 2017).  It is strongly recommended that Plaintiff use the form designed for use in this District for civil rights actions.  He should label the pleading "First Amended Complaint" and include Case Number 16-cv-1179-MJR.  The amended complaint shall conform to the designation of claims into the counts enumerated by the Court in this order.  The amended complaint **SHALL NOT** include any of the counts dismissed with prejudice (Counts 1, 4, 5, 7, and 8).  In repleading his complaint, Plaintiff shall specify, *by name*,[3] each Defendant alleged to be liable under the count, as well as the actions alleged to have been taken by that Defendant.  New individual Defendants may be added if they were personally involved in the constitutional violations.  Plaintiff should attempt to include the facts of his case

---

[3] Plaintiff may designate an unknown Defendant as John or Jane Doe, but should include descriptive information (such as job title, shift worked, or location) to assist in the person's eventual identification.

in chronological order, inserting Defendants' names where necessary to identify the actors and the dates of any material acts or omissions.

An amended complaint supersedes and replaces the original complaint, rendering the original complaint void.  *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004).  The Court will not accept piecemeal amendments to the original complaint. Thus, the First Amended Complaint must contain all the relevant allegations in support of Plaintiff's claims and must stand on its own, without reference to any other pleading.  Should the First Amended Complaint not conform to these requirements, it shall be stricken.  Plaintiff must also re-file any relevant exhibits he wishes the Court to consider along with the First Amended Complaint.  Failure to file an amended complaint shall result in the dismissal of this action with prejudice.  Such dismissal shall count as one of Plaintiff's three allotted "strikes" within the meaning of 28 U.S.C. § 1915(g).

No service shall be ordered on any Defendant until after completion of the § 1915A review of the First Amended Complaint.

In order to assist Plaintiff in preparing his amended complaint, the Clerk is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action

for want of prosecution.  *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED: March 7, 2017**

s/ MICHAEL J. REAGAN
**Chief Judge**
**United States District Court**