IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ROGELIO OROZCO, # R-26820,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 16-cv-1179-MJR |
| | ) |
| **KIMBERLY S. BUTLER,** | ) |
| **MINN T. SCOTT,** | ) |
| **REBECCA A. COWAN,** | ) |
| **ERIN S. CARTER,** | ) |
| **LESLIE McCARTY,** | ) |
| **SALVADOR A. GODINEZ,** | ) |
| **SCOTT T. HOLTE,** | ) |
| **ABERARDO A. SALINAS,** | ) |
| **RANDY S. PFISTER,** | ) |
| **TERRI ANDERSON,** | ) |
| **DONALD STOLWORTHY,** | ) |
| **JASON HART,** | ) |
| **JOHN DOE 1 (Menard Property Room** | ) |
| **Supervisor),** | ) |
| **and JOHN DOE 2 (Pontiac Property Room** | ) |
| **Supervisor),** | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

This matter is before the Court for a preliminary review of the First Amended Complaint (Doc. 10), filed March 29, 2017. Plaintiff is an inmate at Stateville Correctional Center, where he was housed when he filed the instant *pro se* civil rights action. The Court shall review this amended pleading pursuant to 28 U.S.C. § 1915A, and shall also evaluate whether it complies with the instructions given to Plaintiff in the Court's order of March 7, 2017 (Doc. 9). As shall be explained below, the First Amended Complaint, and this entire action, shall be dismissed pursuant to Federal Rule of Civil Procedure 41(b).

1

On March 7, 2017, Plaintiff's original Complaint (Doc. 5), which named 11 Defendants in connection with events that occurred in both Menard Correctional Center and Pontiac Correctional Center, was dismissed without prejudice. (Doc. 9). The Court divided the claims in Plaintiff's complaint into 9 counts. Counts 1, 4, 5, 7, and 8 were dismissed with prejudice. Each of these claims was based on an alleged deprivation of a liberty interest without due process in disciplinary proceedings conducted in 2014. Counts 2, 3, 6, and 9 were dismissed without prejudice. All of the named Defendants were dismissed from the action. Defendants Scott, Cowan, McCarty, Godinez, Anderson, and Stolworthy were dismissed from the action with prejudice, because they were named in connection with the counts that were dismissed with prejudice.

After dismissing the claims and Defendants, the Court instructed Plaintiff that if he wished to further pursue Count 9, he could do so by filing a First Amended Complaint. Count 9 related only to the conditions of Plaintiff's confinement in punitive segregation at Pontiac, and was described as follows:

> **Count 9:** Eighth Amendment claim against Pfister, for housing Plaintiff in cells infested with insects and contaminated with feces, subjecting him to intolerable noise, and failing to provide him with adequate nutrition during Plaintiff's segregation confinement.

The Court noted that if Plaintiff chose to submit an amended complaint in connection with Count 9, the action would likely be transferred to the Central District of Illinois, where Pontiac is located. The Court specifically ordered that "[t]he amended complaint **SHALL NOT** include any of the counts dismissed with prejudice (Counts 1, 4, 5, 7, and 8)." (Doc. 9, p. 27).

### The First Amended Complaint (Doc. 10)

In the amended pleading, Plaintiff includes all the original Defendants, including those who were dismissed from the action with prejudice, and adds three more parties. The statement

of claim spans 34 pages. (Doc. 10, pp. 5-38). Plaintiff begins by re-pleading his due process challenge to his disciplinary conviction for gang activity, which the Court had dismissed with prejudice under Count 1. (Doc. 9). While Plaintiff's original complaint attacked the disciplinary proceedings for failing to comply with various administrative regulations, he now focuses his argument on the sufficiency of the evidence relied upon to find him guilty of the charges. He claims that the guilty finding was based solely on the disciplinary report filed by Carter, which relied on statements provided by confidential informants and by the Menard Intelligence Unit. (Doc. 10, pp. 9-14). He faults Scott and Hart, who conducted the first disciplinary hearing, for failing to independently corroborate the confidential sources' information, assess their credibility, or require them to appear at the hearing. Based on these alleged deficiencies, Plaintiff claims that Scott and Hart were not impartial when hearing his disciplinary ticket. He also re-alleges the claims included in Count 1 against Scott, Cowan, and Butler for re-hearing the ticket and imposing a 1-year term of segregation on the charges, at Butler's direction. (Doc. 10, pp. 16-17).

Next, Plaintiff alleges that in July 2014, John Doe #1 (Personal Property Officer at Menard) and John Doe #2 (Personal Property Officer at Pontiac) confiscated and/or destroyed 2 boxes of Plaintiff's personal legal materials, including transcripts and other documents from his criminal case. (Doc. 10, pp. 18-19). He claims that these Defendants acted in conspiracy with Menard's Intelligence Unit and Administration, to punish him for refusing to become a confidential informant in April 2014 against inmates involved in gangs. Plaintiff had included similar allegations of retaliation in the original Complaint in Count 3,[1] in connection with his claims against Pfister. (Doc. 9, p. 6). He characterizes this claim in the First Amended Complaint against the John Does as one for retaliation as well. (Doc. 10, p. 36).

---

[1] Count 3 was dismissed without prejudice. (Doc. 9, pp. 12-14, 27).

Turning to McCarty and Godinez, Plaintiff alleges that when they remanded the disciplinary matter back to Carter to provide additional information on the evidence against Plaintiff, they failed to address Plaintiff's complaints that the disciplinary procedure was fraudulent and that the hearing committee was not impartial. (Doc. 10, pp. 19-20). Plaintiff raised similar allegations in the dismissed Count 4,[2] although in the original Complaint he focused on violations of the Illinois Administrative Code as the basis for his due process claims. He now argues that he was denied due process because of insufficiency/unreliability of the evidence underlying the finding of guilt. (Doc. 10, pp. 21-22).

Plaintiff next repeats some of his original allegations against Holte and Salinas, who conducted a re-hearing of the disciplinary matter at Pontiac in which they denied Plaintiff's request to call Menard Officer Scott as a witness. (Doc. 10, pp. 23-25). He adds allegations challenging the sufficiency of the evidence, and includes a claim against Pfister for approving the re-imposition of discipline. These due process claims were dismissed with prejudice under Count 5 upon review of the original Complaint. (Doc. 9, pp. 16-17, 27).

The First Amended Complaint continues by re-asserting claims against Anderson and Stolworthy for failing to address Plaintiff's complaints about the disciplinary proceedings, when they reduced his punishment from a 1-year segregation term back to the original 3-month period. (Doc. 10, pp. 26-27). This claim was dismissed with prejudice under Count 7, as were the associated Defendants. (Doc. 9, pp. 19-20, 27).

Plaintiff then turns to the conditions of his confinement while in punitive segregation. (Doc. 10, pp. 28-32). He first points to the "atypical and significant hardship" he faced because he had to serve a wrongful sentence imposed after alleged due process violations. He discusses

---

[2] The due process claim in Count 4, and McCarty and Godinez, were dismissed from the action with prejudice. (Doc. 9, p. 27).

the potential psychological damage that can result from a person being held in solitary confinement, and contrasts his inability to access opportunities for jobs, vocational classes, sports, visits, and the like while in segregation, to the privileges he enjoyed while he was in general population at Menard. (Doc. 10, pp. 28-29). He re-alleges some of the facts included in the original Complaint, including being housed next to inmates who were seriously mentally ill, and who screamed constantly, kicked doors and walls, and threw urine and feces. These conditions caused Plaintiff to be unable to sleep adequately. At some point, he was placed in a cell where the walls were smeared with feces and was infested with bugs, but was not given any cleaning supplies. (Doc. 10, p. 31). He was not given sufficient toilet paper, clean clothing, or bedding. His religious practices were restricted, as were his ability to communicate with outsiders through the mail (he does not detail these allegations).

The segregation conditions Plaintiff describes in the First Amended Complaint are similar to matters that he pled in the original Complaint, designated as Count 9. In discussing these conditions, however, Plaintiff states that although he "suffered severely" in Pontiac's segregation unit, he " 'does not challenge' those conditions in this Southern District Court." (Doc. 10, p. 31). He states that he "describes these conditions as atypical hardship while wrongfull[y] incarcerated in punitive segregation." *Id.*

While Plaintiff does not make any reference in the First Amended Complaint to Counts 1-9, he enumerates a list of "Constitutional Violations" at the end of his pleading. (Doc. 10, pp. 34-38). There, he asserts that Defendants violated his constitutional rights to due process, as well as subjected him to retaliation and deliberate indifference. Every one of his listed "violations" is based on the allegedly flawed disciplinary action – with only one exception: the retaliation claim against the John Doe Defendants for destroying/confiscating Plaintiff's legal

documents. (Doc. 10, p. 36, ¶ 103). Plaintiff notably does *not* include the claim for unconstitutional conditions of confinement that was designated as Count 9, among his list of alleged constitutional violations.

As relief, Plaintiff seeks damages against all Defendants, as well as an order expunging the disciplinary reports issued against him on April 22, 2014, May 7, 2014, and November 11, 2014. (Doc. 10, pp. 33, 38)).

## Discussion

The First Amended Complaint fails to comply with this Court's order at Doc. 9. It attempts to revive the due process claims in Counts 1, 4, 5, and 7, which were dismissed with prejudice, despite the fact that Plaintiff was specifically ordered not to include those claims in his amended complaint. (Doc. 9, p. 27). It fails to include the claim in Count 9 for unconstitutional conditions of confinement at Pontiac – which was the one claim that Plaintiff was instructed to re-plead in the First Amended Complaint in order to proceed with this action. Not only does Plaintiff omit the claim in Count 9 from the list of alleged constitutional violations that he wishes to pursue, he specifically disavows any intention to pursue that claim in this Court, by stating that he "does not challenge" the conditions in his segregation cell in this action. (Doc. 10, p. 31).

The inclusion of the counts that were dismissed with prejudice, and the omission/abandonment of Count 9 provide sufficient grounds for the Court to dismiss the First Amended Complaint, and the action, pursuant to Federal Rule of Civil Procedure 41(b), for failure to comply with an order of the Court. Furthermore, an examination of the merits of Plaintiff's allegations reveals that Plaintiff's attempts to re-plead the claims dismissed with prejudice in the March 7, 2017, order would fail even if the Court had allowed him to re-assert those matters.

The due process claims in Counts 1, 4, 5, and 7 were dismissed because the original Complaint did not support Plaintiff's assertion that he was deprived of his procedural due process rights in the course of the disciplinary hearings. These counts were dismissed for failure to state a claim upon which relief may be granted, because the failure to comply with state administrative rules, on which Plaintiff based his claims, did not amount to a constitutional violation. In the First Amended Complaint, Plaintiff abandons that theory, and now argues that he was deprived of due process because the evidence against him was flawed, unverified, and not credible, and prison officials' reliance on that evidence demonstrated their lack of impartiality.

Plaintiff's challenge to the evidence, however, is unavailing. As the Court previously explained, "some evidence" is all that is required to sustain a finding of guilt in a disciplinary action. *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994). Even a meager amount of evidence is enough to satisfy due process concerns. *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007) ("once the meager threshold has been crossed our inquiry ends"). As this Court explained in the original threshold order:

> [T]he committee had evidence before it, in the form of the statements of the confidential informants, to support the finding that Plaintiff had engaged in unauthorized gang activity. Although this evidence was contested, it was nevertheless sufficient to impose disciplinary sanctions on Plaintiff.

(Doc. 9, p. 8). Because the low evidentiary threshold was met here, there was no due process violation when Plaintiff was found guilty of the disciplinary charges based on the evidence presented at his hearings.

None of the cases cited by Plaintiff in the First Amended Complaint regarding the sufficiency of the evidence (many of which are from other circuits or district courts) compel the Court to reach a different result. (Doc. 10, pp. 10-13). In Plaintiff's case, the evidence identifying him as a leader in the Latin Kings gang included statements from 3 different

7

confidential informants, made to Menard Intelligence Unit officials during the course of an investigation into gang activity, and the sources were "deemed reliable due to the consistency of their statements." (Doc. 10, pp. 41, 49, 69).

Plaintiff's claims that the disciplinary hearing committees were not impartial rest wholly on his charge that the original committee (and later the panels that re-heard the charges) failed to take sufficient steps to verify the reliability of the evidence against him. However, this claim of lack of impartiality fails, because the evidence of his guilt satisfied due process requirements.

Plaintiff also reiterates his claim in Count 5 that in the November 2014 re-hearing conducted by Holte and Salinas, he was refused permission to call a witness (Scott). A denial of a witness may amount to a violation of the procedural protections set forth in *Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974). However, the Court determined in discussing the original Complaint that the testimony Plaintiff had hoped to elicit from Scott would merely have duplicated information that was already in the record regarding prison officials' failure to follow state rules setting time limits for conducting the previous disciplinary hearings. (Doc. 9, pp. 16-17). Her absence thus did not amount to a due process violation. The First Amended Complaint contains no allegations that indicate this conclusion was incorrect.

The First Amended Complaint thus does not establish any unconstitutional deprivation of procedural due process safeguards in the adjudication of Plaintiff's disciplinary charges. And, as explained in the Court's earlier threshold order, if there was no procedural violation of constitutional standards during the disciplinary hearing process, then the resulting confinement in punitive segregation will not amount to a deprivation of a liberty interest without due process. (Doc. 9, pp. 9-11).

Even if the Court were compelled to examine the conditions of Plaintiff's confinement in

segregation, the factual allegations in the First Amended Complaint do not demonstrate that those conditions amounted to an "atypical and significant hardship" when compared to the benchmark of conditions in non-disciplinary segregation. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997); (Doc. 9, p. 9). Plaintiff mentions the potential effects of prolonged isolation, but does not describe any adverse reactions he personally suffered, or even state whether he was subjected to some form of isolation (other than his inability to partake in various group activities available in general population). (Doc. 10, pp. 28-29). His complaints that he endured restrictions on his contact visits, telephone use, showers, yard time, and dining hall access while in segregation do not describe anything more onerous than a prisoner would be likely to experience while housed in administrative/non-disciplinary segregation. (Doc. 10, p. 30).

The allegations that come closest to suggesting atypical/significant hardship are Plaintiff's statements that he was housed near mentally ill inmates who disturbed his sleep for much of the year he spent in punitive segregation; he was placed in a cell (for an unstated period of time) contaminated with human waste and infested with insects, and had no cleaning supplies; and he was not given clean clothing or bedding (again, he does not state how long this condition prevailed). (Doc. 10, p. 31). Plaintiff does not describe any physical or psychological problems he suffered as a result of these alleged conditions, and he does not indicate how much time he spent in an unsanitary cell. These vague allegations do not compel a conclusion that Plaintiff suffered "atypical and significant hardships" that would support a claim for deprivation of a liberty interest – and again, he has not met the prerequisite of showing that there was a procedural violation of constitutional dimension in the disciplinary hearing that landed him in segregation.

The First Amended Complaint presents no facts or arguments indicating that the dismissal with prejudice of the due process claims in Counts 1, 4, 5, or 7 was incorrect. Plaintiff's alternative arguments in the amended pleading do not demonstrate that his punishment with segregation deprived him of a liberty interest in violation of his rights to due process. Counts 1, 4, 5, and 7 shall remain dismissed with prejudice, as ordered on March 7, 2017, in Doc. 9.

Plaintiff declined the opportunity this Court offered him, to re-plead his Eighth Amendment claim designated as Count 9, for being housed at Pontiac under unconstitutional conditions of confinement. The dismissal of Count 9 without prejudice shall stand, so that Plaintiff may pursue it in the proper federal district court if he so desires. However, nothing herein should be construed as a comment on the potential merits or timeliness of such a claim.

That leaves Plaintiff's allegations, related to Count 3 (which was dismissed without prejudice), that John Doe #1 (Menard Personal Property Officer) and John Doe #2 (Pontiac Personal Property Officer) disposed of Plaintiff's 2 legal property boxes. Plaintiff believes they took this action in retaliation for his refusal to become an informant, in conspiracy with Menard's Intelligence Unit and Administration. (Doc. 10, pp. 18-19; 36). Implausible as these allegations appear, they arguably could survive scrutiny under 28 U.S.C. § 1915A. However, because Plaintiff has brought these allegations of retaliation in the context of a First Amended Complaint that flagrantly violates this Court's order of March 7, 2017, and is thus subject to dismissal, this claim shall not be considered further in this action. Count 3 shall remain dismissed without prejudice, and Plaintiff's newly asserted retaliation claims against John Doe #1 and John Doe #2 shall likewise be dismissed without prejudice. If Plaintiff wishes to further pursue a retaliation claim against John Doe #1 and/or John Doe #2, he must do so in a separate

action.

## Disposition

The First Amended Complaint (Doc. 10) is **DISMISSED** for failure to comply with an order of this Court (Doc. 9), because Plaintiff included claims (Counts 1, 4, 5, and 7) which had previously been dismissed with prejudice, and which he had been ordered to omit from his amended pleading. Further, Plaintiff chose not to pursue the claim in Count 9, after the Court allowed him to re-plead this count in order to maintain the action.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** with prejudice pursuant to Federal Rule of Civil Procedure 41(b), for failure to comply with an order of this Court. *See Ladien v. Astrachan*, 128 F.3d 1051 (7th Cir. 1997); *Lucien v. Breweur*, 9 F.3d 26, 29 (7th Cir. 1993).

The disposition of the individual claims in this action shall remain as ordered in Doc. 9, that is: **COUNTS 1, 4, 5, 7, and 8** are **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted. **COUNTS 2, 3, 6, and 9** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted. Additionally, Plaintiff's retaliation claims against John Doe #1 and John Doe #2, and any other claims that are mentioned in the First Amended Complaint but not addressed in this Order, are **DISMISSED** without prejudice.

Because the action is dismissed pursuant to Rule 41(b) and Plaintiff may still have a claim against John Doe #1 and/or John Doe #2 that would survive § 1915A review, this dismissal shall **not** count as one of Plaintiff's three allotted "strikes" under the provisions of 28 U.S.C. § 1915(g).

Plaintiff's obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

If Plaintiff wishes to appeal this dismissal, his notice of appeal must be filed with this Court within thirty days of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998). Moreover, if the appeal is found to be nonmeritorious, Plaintiff may also incur a "strike" under 28 U.S.C. §1915(g). A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended.

The Clerk shall **CLOSE THIS CASE** and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: June 27, 2017**

                                                **s/Michael J. Reagan**
                                                Chief Judge
                                                United States District Court